## Case No. 7,373.

### JOHNSON v. BISHOP.

[Woolw. 324;[1] 8 N. B. R. 533; 21 Pittsb. Leg. J. 77.]

Circuit Court, D. Iowa. Oct. Term, 1868.

Mr. Gillmore, for plaintiff in error.
Mr. Rankin, for defendant in error.

MILLER, Circuit Justice. If the matters set forth in the plaintiff's petition are true, which we are here to assume, the title to the goods attached vested in the assignee as soon as the assignment to him was executed. And with this title he acquired a right of immediate possession. This possession he could recover in a court of justice. But to what court should he apply? Had this property been in the possession of a party who could not shelter himself behind the jurisdiction of a court of law, undoubtedly the federal court would have had jurisdiction of the case. It would then have been within the terms of the 1st and 2d sections of the act. Does that circumstance take the case out of the statute?—that is, does the fact that, at the time the bankruptcy proceedings were instituted, the property was in the hands of the sheriff, under attachments issued out of the state courts, deprive the federal court of its jurisdiction? The property is held by the sheriff under writs rightfully issued, and his possession is the possession of the court by the command of whose writ he seizes it. And so long as the proceedings, in virtue of which it was taken, are pending, that possession will not be interfered with by any other court.

This general principle has been acted upon in England in many cases in which two courts of concurrent jurisdiction were sought to be brought into collision. Payne v. Drewe, 4 East, 523; Evelyn v. Lewis, 3 Hare, 472; Russell v. East Anglian R. Co., 3 Macn. & G. 104. By this salutary rule harmony is maintained between the several superior courts of law and chancery, which have co-extensive and concurrent jurisdiction in a great variety of cases. The importance of the rule, and of scrupulously obeying it in this country, is greatly increased by the fact that the federal and state courts, although exercising their jurisdiction in the same territory, over the same subjects, and often the same classes of litigants, draw their existence from different sources, and are to one another foreign tribunals. In no other way can unseemly and mischievous collisions be avoided.

In Hague v. Lucas, 10 Pet. [35 U. S.] 400,

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

property had been taken in attachment by the state sheriff, and released on bail. when the marshal of the United States seized it on execution out of the federal court. It was held, that the latter could not levy on the property, because it was in the possession of the state court by virtue of its writs first levied. In Peck v. Jenness, 7 How. [48 U. S.] 612, the property had been taken in attachment out of the state court, after which the debtor was discharged under the bankrupt act of 1841 [5 Stat. 440]. The question was, whether, under the law, this discharge dissolved the attachment. And it was held that it did not. In Pulliam v. Osborne, 17 How. [58 U. S.] 471, it was held that when co-ordinate liens were obtained by one judgment in a state court, and another in a United States court, a seizure by a sheriff under an execution on the former, gave priority over the latter. In Taylor v. Carryl, 20 How. [61 U. S.] 583, a vessel had been attached on state process, and afterwards arrested in admiralty. Sales being made in each suit to different persons, the purchaser under the decree in admiralty brought replevin against the purchaser under the attachment proceedings in the state court. It was held that the admiralty process and proceedings and decree and sale were ineffectual to make a title, because that court could not take the property from the state court which had possession of it. And the rule was so held in the similar cases of The Oliver Jordan [Case No. 10,-503]; The Robert Fulton [Id. 11.890]; and in Freeman v. Howe, 24 How. [65 U. S.] 450; Ex parte Robinson [Case No. 11,935]; Ex parte Dorr, 3 How. [44 U. S.] 103; and Buck v. Colbath, 3 Wall. [70 U. S.] 334. In the last mentioned case, it is said, that "it is only while the property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not."

It is claimed that, upon this principle, the motion cannot prevail, because the bankruptcy proceedings, terminating in a discharge of the debtor, operated to discharge the attachments out of the state courts at once, without any order in that behalf, so that the sheriff was left without any authority to hold the property. It may be true that the attachments have ceased to have any binding force. But whether they have or not, is the question; and this question depends, not only upon a proposition of law here urged upon us, but also upon two questions of fact, that is, whether Loeb has been adjudicated a bankrupt; and whether he was the only member of the firm of Loeb & Company. Of the principle of law the state court is bound to take judicial notice, but of the two facts stated, it is not bound to take such notice.

No court is bound to take judicial notice of the proceedings of another court. If material to a controversy before it, it must be informed thereof by the pleadings, and if the allegations are denied, they must be proven by the record. The state court can have no knowledge, or even notice, of the proceedings in the federal court, by which its right to possess and adjudicate the property in question is affected. It should be informed, in a proper way, of those proceedings, before its possession is interfered with or assailed. It would be a violation of judicial comity, and provoke unseemly conflicts, to seize the property out of the hands of its officer, just as much in the case before us, as in the cases cited. Information of these facts, in some proper pleading, must be communicated to the court. If the allegations are denied, they must be proved by the record of the district court. To that record the state court must pay heed, and give effect to the principle of law here insisted on. Then all collision will be avoided, and that comity which, in order to have harmonious action, must obtain between the two jurisdictions, will be secured.

Nor is there any foundation for the idea that the federal courts have exclusive jurisdiction of such suits in behalf of the assignee. Neither the 14th section, which gives him the right to sue for and recover the estate, debts, and effects of the bankrupt, nor the 1st section, which fully defines the jurisdiction of the district court, declares it to be exclusive in this class of cases. On the contrary, his right to appear in the state court in this case, and there assert his claim to possession of this property, is expressly recognized by the clause of section 14 which authorizes him to prosecute and defend all suits at law or in equity pending at the time of the adjudication of bankruptcy, in which the bankrupt is a party in his own name. And if the state courts fail to recognize his legal rights, a presumption not here to be indulged, he can, in the proper mode, bring the case from the highest court of the state to the highest court of the United States. Peck v. Jenness, 7 How. [48 U. S.] 612.

I am therefore of opinion, that until some action is had in the state court relinquishing possession of the property in controversy, no action can be brought for that possession in any other court. The judgment of the district court is accordingly affirmed, with costs. Judgment affirmed.