## D. C. WISE COAL COMPANY, Respondent, v. COLUMBIA ZINC & LEAD COMPANY et al., Appellants.

**Springfield Court of Appeals, June 12, 1911.**

1. **BANKRUPTCY: Attachment: Liability on Forthcoming Bond: Effect of Bankruptcy on Attached Property.** In an attachment suit defendant's property was levied upon and on giving a forthcoming bond the possession thereof was released to him. Within four months after the attachment levy defendant was adjudged a bankrupt and the referee in bankruptcy made an order enjoining plaintiff in the attachment suit from selling or interfering with the attached property. This property was then taken possession of and by order of the referee sold by the trustee of the bankrupt estate. The plaintiff proceeded with and obtained a judgment in the attachment suit upon which an execution was issued and returned *nulla bona.* Plaintiff then moved the court for an order upon defendant and its surety for the production of the attached property and for an assignment to plaintiff of the forthcoming bond. *Held,* that the order of the bankruptcy court annulled the attachment lien on this property and its effect was to release the surety on the forthcoming bond and to take away from the circuit court its authority to require the production of the property.

2. ———: ———: **Solvency of Bankrupt at Time of Attachment.** The language of the Bankruptcy Act (67 f, Bankrupt Act, 1898), means that to render a lien acquired by the levy of an attachment writ within four months void, the bankrupt must be insolvent at the time the lien is acquired.

3. ———: ———: ———: **Waiver by Attachment Creditor.** Plaintiff brought an attachment suit and levied upon certain property belonging to defendant, who thereupon gave a forthcoming bond and retained possession of the property. Within four months after the attachment levy, defendant became a bankrupt and the referee in bankruptcy issued an order restraining plaintiff from taking further steps to enforce the sale of the attached property. A notice of this order was served on plaintiff's attorney. The trustee in bankruptcy then took possession of the property and sold it, without objection from plaintiff. *Held,* that having failed to object to the sale of the property, plaintiff will be taken to have acquiesced thereto and in a proceeding to hold the surety on the forthcoming bond cannot take the position that the attachment should not have been set aside because defendant was solvent at the time the levy was made.

4. **ATTACHMENT: Bankruptcy: Liability on Forthcoming Bond.** When a forthcoming bond has been given in an attachment suit, and the possession of the property redelivered to the defendant, the defendant and the surety on the attachment bond are mere bailees of the sheriff, and the property is still in *custodia legis* and subject to the court's order. By the terms of the bond the property is bound to be produced only when the court shall so order; so when the attachment has been annulled by an order of the bankruptcy court, and the authority of the court in which the attachment suit was brought to require the production of the property, has been destroyed, then the forthcoming bond is also annulled and the liability of the surety thereon brought to an end.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED.

*George Hubbert* for appellants.

(1) The attachment, which was the only possible basis of the motions for the order to produce the attached property, and for assignment of the alleged bond, had been utterly dissolved and extinguished as if it had never existed, by reason of the adjudication of defendant's bankruptcy; and, under the United States Court's decisions, the invalidity of such attachment is open to attack, either direct or collateral; and, in consequence, all rights and remedies dependent thereon, including the property order on the supposed forthcoming bond, must likewise fall. Bankrupt Act, 1898, sec. 66, (c), (f); In re Higgins, 97 Fed. 775; In re Kemp, 101 Fed. 689; St. Cyr v. Diagnault, 103 Fed. 854; In re Kenney, 105 Fed. 897; In re Beals, 116 Fed. 530; In re Goldberg, 121 Fed. 581. (2) But at any rate the liability of the defendant, as obligor or receiptor to the sheriff for the attached property was extinguished by the dissolution of the attachment. Hayward v. George, 13 Allen, 66; Berry v. Flanders, 69 N. H. 626, 45 Atl. 591. And there be numerous cases to this effect where the dissolution of attachment came of bankruptcy or insolvency, whether the property went or not into the hands of the trustee, at least unless there is an order continuing the attach-

ment for the benefit of the trustee, which is out of this case. Wright v. Dawson, 147 Mass. 385, 9 Am. St. Rep. 724; Wright v. Morley, 150 Mass. 573, 23 N. E. 252; Lewis v. Webber, 116 Mass. 450; Shumway v. Carpenter (Mass.), 13 Allen, 68; Whittridge v. Maxam, 68 N. H. 323, 44 Atl. 491; Polley v. Hazard, 70 Vt. 220, 40 Atl. 36. (3) To say that respondent could have any rights under the law of this case, on account of failure of defendant to submit the attached property to the execution for the attachment debt, seems to us beyond all reason. It cannot be that plaintiff may claim for the breach of a condition that cannot be performed, without direct violation of positive law, which law abrogated the attachment as if it had never existed. Springer v. Toothaker, 43 Me. 381; Maquota v. Willey, 35 Iowa, 323; Ashley v. Smith, 9 Leigh (Va.) 164; Bank v. Matson, 24 Mo. 333; Jones v. Hawkins, 60 Ga. 52. (4) We submit that, natural justice supports the proposition that it is a good ground of defense for an obligor on a forthcoming bond, to show a clear loss of the subject of attachment through unavoidable occurrence beyond the defendant's control, and by no culpability of the obligor; and that it is wholly immaterial whether it be by providential destruction of the property, or claim of a stranger under predominant title, or paramount judicial writ or proceedings, natural death of attached beast, or legal dissolution and death of attachment itself by involuntary bankruptcy. Gass v. Williams, 46 Ind. 253; Hayman v. Hallam, 79 Ky. 389; Watson v. Simons, 91 Ala. 567; Duncan v. Thomas, 1 Ore. 314; Koener v. Creed, 58 Ind. 554; Clark v. Lamoreux, 70 Wis. 508, 36 N. W. 393.

*H. S. Miller, Haywood Scott* and *John T. Sturgis* for respondent.

(1) There are many precedents in the courts for rendering a judgment which is not to be enforced against the defendant or his property, but for the sole purpose of enabling a plaintiff to enforce the liability of

a surety on a bond or other secondary liability. Kenrick v. Warren, 72 Atl. 461; King v. Block Co., 111 N. Y. S. 102; In re Import. Co., 166 Fed. 427; Hill v. Harding, 130 U. S. 699, 32 L. Ed. 1083; Marx v. Hart, 166 Mo. 518; McDonald v. Loewen, 145 Mo. App. 52; Pinkard v. Willis, 57 S. W. (Tex.) 891; Brown Coal Co., v. Antizak, 128 N. W. (Mich.) 774; In re Paper Co., 102 Fed. 872; In re Maagett, 173 Fed. 232; In re Automobile Co., 119 Fed. 441; Fisse v. Einstine, 5 Mo. App. 90. (2) This court should not hold that the attachment was dissolved by the adjudication in bankruptcy in the absence of any hearing or legal evidence as to the insolvency of the defendant at the time the attachment was levied. Loveland on Bankruptcy (2 Ed.), 566; Collier on Bankruptcy (3 Ed.), 434; Simpson v. Van Etten, 108 Fed. 199; Reed v. Equitable Trust Co. (Ga.), 8 Am. B. R. 242; In re Chappell, 113 Fed. 545. (3) The collateral liability of a surety on a forthcoming bond given in an attachment proceeding is not discharged by an adjudication of bankruptcy whether within or prior to four months of the levy of attachment. Coal Co. v. Antizak, 128 N. W. (Mich.) 774; Pub. Co. v. Grain Co., 108 Mo. App. 485; Hill v. Harding, 130 U. S. 699, 32 Law Ed. 1083; Haber v. Klauberg, 3 Mo. App. 342; Mueller v. Nugent, 46 Law Ed. 405; King v. Amusement Co., 111 N. Y. S. 102, 86 N. E. 1126.

COX, J.—This is the third appeal in this case. The others are reported in 123 Mo. App. 249, 100 S. W. 680, and 143 Mo. App. 587, 128 S. W. 232.

The facts necessary for a determination of the questions arising upon this appeal are as follows:

The plaintiff began suit by attachment against defendant, Columbia Zinc & Lead Company, and levied upon certain property. The defendant gave a forthcoming bond with the United States Fidelity and Guaranty Company as surety, and the possession of the property was released to defendant. Within four months after the levy defendant was adjudged a bankrupt, and an

order made by the Referee in Bankruptcy, directed to plaintiff and other creditors of the bankrupt, enjoining them from taking any steps looking to the sale of the attached property, or interfering with it in any way for a period of twelve months, or if the bankrupt should apply for a discharge in a shorter time, then until such application should be determined. Notice of this order was served upon plaintiff's attorney. The attached property was then taken possession of by the trustee of the bankrupt estate and sold by order of the Referee in Bankruptcy. The plaintiff, however, proceeded with his attachment case to judgment. The defendant, having appeared in that case and filed an answer, and also a plea in abatement, the judgment finally rendered was a general judgment. Upon this judgment execution was issued which was returned nulla bona. The plaintiff then moved the court for an order upon defendant and its surety for the production of the property attached, and for an assignment to plaintiff of the forthcoming bond. The defendant and the surety upon the bond, and the trustee of the bankrupt estate, all appeared in opposition to these motions. Evidence was heard disclosing the facts as above set out. The court sustained plaintiff's motions and made the orders as required and the objectors have appealed.

Plaintiff's purpose in asking for the order to produce the property and for an assignment of the forthcoming bond was to prepare the way for a suit upon the bond. The property attached had been taken in charge by the trustee of the bankrupt estate and sold and it was known that the property could not be produced, but the order for its production and failure to produce were essential to enable plaintiff to sue upon the bond. This fact was recognized by all of the objectors, hence their opposition to the orders.

The bankruptcy proceedings were begun within four months after the levy of the attachment writ and the important questions in this case are: Did the bank-

ruptcy proceedings annul the attachment and destroy its lien, and if so, did this annulment release the surety on the forthcoming bond?

There are many cases which, if the language used therein is to be taken literally, hold that bankruptcy proceedings annul all liens acquired within four months, but we do not understand that the statute so reads. Section 67 of the Bankrupt Act of 1898, upon this question, is as follows:

"That all liens, judgments, attachments, or other liens obtained through legal proceedings against a person *who is insolvent,* at any time within four months prior to the filing of a petition in bankruptcy, against him, shall be deemed null and void in case he is adjudged a bankrupt and the property affected by the lien, judgment, attachment, or other liens, shall be deemed wholly discharged and released from the same." (Italics are ours.)

As we construe this language it means that to render a lien, acquired by the levy of an attachment writ within four months, void, the bankrupt must be insolvent at the time the lien is acquired, and we have found no case holding otherwise when the attention of the court was called to this question. To our mind it would be unjust to hold that in the absence of fraud a party acquiring a lien upon specific property by attachment proceedings should, under all circumstances, be held to take the risk of his debtor becoming insolvent within four months threafter even though he might be entirely solvent at the time the lien was acquired. The purpose of the statute is to prevent preferences between creditors of an insolvent. In re Kenney 105 Fed. 897, and is not intended to hamper legitimate business between solvent persons. The creditor acquiring such a lien must take the risk of his debtor being insolvent at the time the lien attaches, if it is acquired within four months before bankruptcy proceedings are begun, but if the debtor is solvent when the lien attaches though it be within

four months of the beginning of proceedings in bankruptcy, there can be no preferences at the time the lien attaches, and the creditor cannot be forced to lose his security by the debtor becoming insolvent thereafter. [Collier on Bankruptcy (6 Ed.), p. 476; Simpson v. Van Etten, 108 Fed. 199; Paper Co. v. Gomenbel, 143 Fed. 295.]

Although the levy was made within the four month's period in this case it was not annulled by the proceedings in bankruptcy unless the debtor was, in fact, insolvent at the time of the levy. But the plaintiff, in this case, is not now in a position to litigate that question for the reason that the Referee in Bankruptcy issued an order restraining the plaintiff and other creditors from taking any further steps to enforce sale of the attached property, or interfering with it in any way, and notice of this order was served on plaintiff's attorney. The trustee then took possession of the property and sold it without objection from plaintiff, hence, plaintiff must be held to have acquiesced in the sale of the property by the trustee for the benefit of the bankrupt estate, and if it has any remedy left it is to apply to the bankruptcy court and ask that the proceeds of the sale be applied to its debt; but for the purposes of this case in this court it must be held that the lien of the attachment was lost and the attachment itself annulled when the property was sold with plaintiff's consent by the trustee of the bankrupt estate.

Respondent insists, however, that even if the attachment was annulled by the proceedings in bankruptcy, yet such annulment did not release the surety on the forthcoming bond. To sustain this position respondent contends that Haber v. Klauberg, 3 Mo. App. 342, is squarely in point. The facts in that case were similar to the facts in this case with the exception that there was no restraining order issued by the Referee in Bankruptcy, and no appearance in the state court by the trustee in bankruptcy, and no resistance made to the order

157 App.—21

for the production of the property, but when the sureties upon the forthcoming bond were sued upon the bond they sought to defend upon the ground that their principal had been adjudged a bankrupt within four months after the levy of the attachment writ, and that for that reason they were discharged. The court held in that case that the state court was not bound to take judicial notice of the proceedings in the bankruptcy court, and since the circuit court's attention was not called to the proceedings in bankruptcy until after judgment upon the merits and an order to produce the property that it was too late for the sureties upon the forthcoming bond when sued upon the bond to plead the proceedings in bankruptcy as a defense. That question does not arise in this case because of the fact that a restraining order was issued in this case and service had upon the plaintiff. In addition to this the trustee of the bankrupt estate appeared in the circuit court and objected to the order for the production of the property being made. In this case the trial court's attention was called to the bankruptcy proceedings before the order to produce the property was made, hence the holding of the Court of Appeals in the Haber case is not authority in this case.

Rosenthal et al. v. Perkins et al. (Cal.), 55 Pac. 804, is also relied upon as squarely in point. In that case a bond with alternative conditions was given by which it was provided that should judgment be secured the property would be reproduced or its value paid. The principal in the bond went into voluntary insolvency under the California Statute, and the property was disposed of in that proceeding. The court held that the bond being in the alternative the impossibility of complying with one provision,—to produce the property,—did not destroy the other provision which bound the surety to pay the value of the property and the surety was held liable. This holding was based upon the terms of the bond which is unlike the bond in this case.

We are also cited to many other cases to sustain respondent's position of which Hill v. Harding, 107 U. S.

699; King v. Block Amusement Co., 111 N. Y. Sup. 102, and World Publishing Co. v. Rialto Grain Co., 108 Mo. App. 479, 83 S. W. 781, are types. An examination of these cases will show that the result was determined by the terms of the bond. The bond in the Amusement case was an appeal bond, conditioned for the payment of the judgment, should it be affirmed. The other cases were bonds given in lieu of the attachment, and the giving of the bond dissolved the attachments, and the sureties upon these bonds also bound themselves to pay the judgment should one be obtained. In these cases it was held, and rightly so, that the bankruptcy of the principal and his discharge did not release the sureties, and this because the sureties had, by the terms of their bond, become sureties for the debt, and, by the express provisions of the Bankrupt Act, sureties for a bankrupt's debt are not released by the discharge of the bankrupt. In this case, however, no such obligation was assumed by the surety on the forthcoming bond. It did not agree to pay any judgment that might be secured. When the forthcoming bond was given the property was in the hands of the sheriff, under the attachment, and was, therefore, in custodia legis, and subect to the order of the court. When this bond was given the possession of the property was, by the sheriff, delivered to the attachment debtor and the obligation of the surety upon the bond was that the property should be forthcoming when the court should so order. The property remained in custodia legis, the lien of the attachment remained and the attachment debtor while holding possession of the property was merely a bailee of the sheriff, and the property remained subject to the court's order. [Jones to the Use v. Jones, 38 Mo. 429; Fleming v. Clark, 22 Mo. App. 218; McDonald v. Loewen, 145 Mo. App. 49 1. c. 58, 130 S. W. 52.]

Had no forthcoming bond been given, and the property remained in the hands of the sheriff it is clear that the bankruptcy proceedings would have resulted in the annulment of the attachment, and the sale of the

property for the benefit of the estate of the bankrupt would have released the property, and at the same time destroyed the state court's control over it in this case. The court would, in that case, have had no power to make an order upon the sheriff to produce the property or to sell it to satisfy the judgment. As we have seen, the attachment debtor and his surety on the forthcoming bond were mere bailees for the sheriff, and by the terms of their bond they were only bound to produce the property when the court should so order, and when the attachment was annulled and the authority of the court to order and require the production of the property was destroyed, the forthcoming bond was also destroyed, and the liability of the surety thereon brought to an end.

Some other questions are presented but from what we have said it follows that under the facts in this case there can be no recovery against the surety upon the forthcoming bond, hence, it is unnecessary to discuss the other questions.

The orders of the circuit court for the production of the property and the assignment of the forthcoming bond are reversed and annulled. All concur.