TEXAS FIDELITY & BONDING CO. v.
FIRST STATE BANK OF
CHANNING et al.†

(Court of Civil Appeals of Texas. Amarillo.
May 25, 1912. Rehearing Denied
June 29, 1912.)

1. BANKRUPTCY (§ 20*)—FILING PETITION—ACTION PENDING AGAINST BANKRUPT.

The filing of a petition in bankruptcy against one, while action against him on a debt, in which he has given a replevy bond, is pending, does not deprive the court of power to proceed to judgment in such action for the debt and on the bond.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. § 20.*]

2. BANKRUPTCY (§ 100*)—ADJUDICATION—EFFECT ON BANKRUPT'S SURETY.

The surety on a replevy bond to release attached property is not released from liability by reason of the principal, after giving the bond, though within four months of the levy, being declared a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. § 100.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by the First State Bank of Channing against J. J. Morris and others. From a judgment against Morris and the Texas Fidelity & Bonding Company, surety on the replevin bond given in the action by Morris, said company appeals. Affirmed.

Clifford Braly and W. B. Chauncey, both of Dalhart, for appellant. Durrell Miller, of Channing, and P. B. Cox, of Wichita Falls, for appellees.

GRAHAM, C. J. The record in this case shows that on June 10, 1911, the First State Bank of Channing filed suit in the district court of Dallam county against J. J. Morris and his wife, Belle Morris, for the principal, interest, and attorney's fees alleged to be due on a certain promissory note, and on proper affidavit and bond the plaintiff caused a writ of attachment to be issued and levied on certain property of the defendant J. J. Morris; that on the 14th day of June, 1911, J. J. Morris, as principal, and the Texas Fidelity & Bonding Company, as his surety, executed and delivered a statutory replevy bond in the sum of $1,500, and that the property which had been levied upon under the writ of attachment was thereupon delivered by the officer making the levy to said J. J. Morris.

The record further shows that on August 25, 1911, certain of the creditors of said J. J. Morris, filed in the United States District Court for the Northern District of Texas their petition to have said J. J. Morris declared a bankrupt.

The record also shows that on September 5, 1911, the district court of Dallam county rendered judgment in favor of the First State Bank of Channing against J. J. Morris for the principal, interest, and attorney's fees found to be due on the note sued on in the sum of $1,283.30, and also at the same time rendered judgment on said replevy bond in favor of the First State Bank of Channing against J. J. Morris, as principal, and the Texas Fidelity & Bonding Company, as surety, for the sum of $1,283.30; it being further adjudged that plaintiff below take nothing by virtue of its suit as against Belle Morris.

The record further shows that neither of the defendants below, nor the bonding company, at the time the judgment was rendered, had filed an answer in the cause, or made any appearance or defense therein, though a practicing lawyer at that bar did orally state to the court, just prior to the rendition of the judgment, that a petition in involuntary bankruptcy against said J. J. Morris had been filed, though nothing further than this was done or said by any person or firm in any way connected with the alleged bankrupt or his estate.

The record shows that on September 15, 1911, the said J. J. Morris was duly and legally declared a bankrupt, and on September 27, 1911, the bonding company filed in the district court of Dallam county, in this cause, its motion or petition for a new trial, based on the legal propositions that the trial court was bound to take notice of the bankruptcy proceeding then pending against J. J. Morris, and was therefore without power to render the judgment for debt against him, and for the same reason was without power to render judgment against Morris and the bonding company on the replevy bond; facts being alleged on which these contentions were based. The court heard evidence in support of and against said motion, and on October 14, 1911, in all things overruled the motion.

The record shows that the bonding company alone prosecutes an appeal from said judgment and proceedings, and submits the case in this court on two assignments of error, as follows:

"(1) The court erred in retaining jurisdiction and originally rendering judgment in this cause against defendant J. J. Morris for plaintiff's debt, and against the defendants J. J. Morris and the Texas Fidelity & Bonding Company as principal and surety, respectively, on the replevy bond, because at the date of the trial of this cause and date of rendition of said judgment a petition to have the said J. J. Morris declared an involuntary bankrupt was pending in the United States federal court for the Northern District of Texas, and the pendency of said petition was properly called to the court's attention, and before evidence was heard or judgment rendered by the court herein.

"(2) The court erred in overruling and refusing the motion of the Texas Fidelity &

Bonding Company to set aside the judgment rendered against it as surety on replevy bond, and in refusing to grant it a new trial, for the reason that it was shown on the hearing of said motion that the defendant J. J. Morris had been adjudged an involuntary bankrupt within less than four months from the date of the issuance of the writ of attachment and the execution of the replevy bond by the Texas Fidelity & Bonding Company as surety."

[1] We do not concur in appellant's contention that the mere fact that a petition in bankruptcy had been filed was sufficient to deprive the trial court of the power to proceed to judgment in this case; nor do we believe the trial court would have been deprived of the power to render judgment in the case if it had been made to appear that J. J. Morris had actually been adjudged a bankrupt before the judgment appealed from was rendered. Belcher Land Mortgage Company v. Bush, 67 S. W. 444. Bankruptcy courts, nor their officers, will interfere in any way with the state courts in behalf of bankrupts or their property, except where the interest of the bankrupt or his creditors may require it. Orr v. Tribble et al. (D. C.) 158 Fed. 897.

The record in this case shows most clearly that the interest of the creditors of the bankrupt could not be served by the bankruptcy court in any way interfering in this proceeding; in fact, it is clear from the record that, if appellant were successful in its efforts to be relieved from its liability on the replevy bond, the interest of all other creditors would suffer; for in that event the appellee in this cause would in all probability take such steps as would result in its sharing in the estate of the bankrupt with his other creditors.

In the absence of it being made to appear that some portion of the bankrupt's estate is in the custody of a creditor, we know of no power in the bankruptcy courts, or any other court, that would warrant the forcible bringing of such creditor into the bankruptcy court, and ordinarily a creditor of a bankrupt, who has his claim properly secured, declines to file the same in the bankruptcy court, or to participate in any way in the bankruptcy proceeding, although the bankrupt will be discharged, so far as all claims are concerned that may have been listed with the proper officer in bankruptcy.

Because we believe that the trial court had the power to render the judgment appealed from, under all the facts and circumstances shown by the record, as they existed at the time the judgment was rendered, appellant's first assignment will be overruled.

[2] Under the record, we think no such excuse was shown by appellant for failure to urge such defenses, if any it had, to the cause of action on which judgment was rendered against it in the trial court, and that there was therefore no error in overruling its motion for a new trial, based on the ground that it had not presented its defenses. It follows that appellant's second assignment should be overruled, unless, as a matter of law, under the entire record, it was error for the trial court to render judgment against appellant on the replevy bond; the record showing affirmatively, as it does, that the principal in the bond was declared a bankrupt within four months of the time of the levy of the attachment process and the execution and delivery of the replevy bond.

While appellant, in its motion for a new trial, alleged, it failed to prove, that J. J. Morris was insolvent at the time the attachment was levied; and, as we understand the law, in order for attachment liens, though acquired within four months of the debtor being declared insolvent, to be void under the provisions of the bankruptcy law, it must be shown affirmatively that at the time of the levy the debtor was insolvent. Pinkard et al. v. Willis et al., 24 Tex. Civ. App. 69, 57 S. W. 891.

As the result of the attachment proceeding in this case has been to increase rather than to diminish the assets of the debtor's estate, we have serious doubt that the provisions of the bankrupt law, as to attachment liens, have any application to the attachment process in this case, and especially do we doubt the right of appellant to urge the question to the detriment of the bankrupt's creditors.

Under the express provisions of the bankruptcy law, the fact that the principal in the replevy bond has been declared a bankrupt in no way relieves appellant as surety thereon. St. Louis World Publishing Company v. Rialto Grain & Securities Co., 108 Mo. App. 479, 83 S. W. 781, and authorities there cited; Cutter v. Evans, 115 Mass. 27; Tapley v. Goodsell, 122 Mass. 176.

The replevy bond having been a valid and binding one when executed and delivered, the fact that the principal has been declared a bankrupt does not in any way relieve appellant. It follows, we think, that the judgment appealed from should, in all things, be affirmed; and it is so ordered.